First case this morning is number 05-1156 Nike Inc v. Dixon Mr. Silberman This is an appeal from the decision of the District Court of Oregon. The appeal has two counts. It has a trade secret issue and it has a breach of implied contract issue. Those are the only two issues that this appeal is directed toward. And you may assume that we know the issues and please get right to the heart of your best argument. Certainly. The subject matter of this case deals with a design for an athletic shoe. This design appears in the supplemental appendix of the parties in particular on page 12970 and in some smaller pictures on the page immediately preceding that. Without getting overly technical, because this is an appeal that deals with issues of law, but I think some factual context is helpful to an understanding of the position of the appellant here. There was a submission, there actually were three submissions, which the appellant made to the defendant, Nike, one in 1999 and two in the year 2000. Let me just ask you about one fact regarding that, just to clarify my own. Yes. In the supplemental appendix there's a response letter from Nike to your client and it's a 2000 letter which says we're returning them. Yes. But that's, your main focus is on an earlier submission in 1999, correct? Correct. Is it different? We feel all three submissions are relevant because the offending product did not appear on the market until the end of the year 2000. So that would be, but what about the 99, but the 99th submission was something other than the 2000 submission for which we have a receipt. No, with the exception of a few additional small photographs in the 2000 submission, all three of the submissions were the same. They consisted of the brochure which appears at page. But there was a separate 2000 submission and a separate 1999. Yes, there were three separate submissions. Is there anything in the record, because in the supplemental appendix we have the letter from 2000, was there any similar letter sent in 1999 or are we just assuming for summary judgment purposes that your client submitted this? Yes, there was extensive deposition testimony taken. Okay, but no record, there's no similar response from Nike in 1999? That we have a copy of, that is correct. For purposes of summary judgment, the assertion of the two earlier substantially identical submissions has been accepted because there is no contrary evidence that he did not make any of the submissions and there's several forms of oral testimony that he did. To not belabor the factual basis of the claim, there was a brochure written and put together by a young Brathcart student. Her technical understanding was very limited. Her end product was kind of a mishmash of an earlier invention with a so-called new invention. The photographs we consider more substantive, which accompanied the actual brochure. The photographs, however, are but superficial views of the subject matter. There were no shop drawings, there were no engineering drawings. Do you agree that it's necessary for your client to have had a trade secret to establish that there are the legal premises of a trade secret before the summary judgment could be reversed? The decision of the judge in Oregon was based on the purported failure of the plaintiff, Judge Dixon, to fill only one of the elements of a trade secret count. The answer to Judge Newman's question is yes, right? Yes, the parties for purposes of summary judgment do not dispute, at least the judge did not question any element other than reasonable steps. That's the issue that the judge's decision was based on. There's no question as to novelty nor any of the other elements of a trade secret claim. Those were not considerations. The judge accepted those as established for purposes of summary judgment. You're not here alleging that anything was secret, is that right? We're not. I'm trying to understand the premise on which, as a matter of law, you state that facts were either improperly found or that there are disputed facts that should at this stage be resolved in favor of your client. I'm just attempting to give the court a little background as a factual context of the legal issues. We don't expect any facts to be resolved by an appellate court. We just want the opportunity at trial to have the facts found through that means. Which legal issue then do you believe should be the subject of trial? It's not a patent infringement issue, right? It's a trade secret issue. Certainly the issue of reasonable steps would be tried. Nike, of course, denies the misuse or any use of Dixon's trade secrets, whether or not he took proper steps to preserve them. What were the reasonable steps that were taken here to protect the confidentiality of the secret? Mr. Dixon limited the knowledge of what he was doing to a very small circle of individuals, which included two people who helped him with the actual technical work, one woman who prepared the brochure, and a photographer that did the pictures for the lady who prepared the brochure. Wouldn't that be true in any case? You always limit, I suppose in a technical sense, the disclosure of something to those people that you have occasion to disclose it to. In my definition, if I have some kind of information, let's say, and I find it necessary or convenient to disclose it to 20 people, I guess I've not disclosed it to the rest of the world. That doesn't seem to me inherently a step to maintain confidentiality. It is simply the fact of disclosure without, so far as I can see, any limitations on further disclosure by those persons to X number. Those very areas were thoroughly explored by a very competent opposing counsel during their depositions of Mr. Dixon he related. He only dealt with people whom he had a personal relationship and trust to, family, pastor, a couple of his co-deputies with the sheriff's department with which he worked at that time. So, yes, these were just not random people who happened to be a printer, who happened to be someone capable of developing a brochure. These were people whom he knew through his church or through his workplace or family. They were very carefully chosen people. Now, the issue that, and the district court accepted that face value. What she had a problem with, however, was the submission without the stamp of confidentiality on it. And that, I think, is where the case law has to be looked at very carefully as to whether or not the proper law applicable to those facts was applied by this judge in Oregon. Now, interestingly, Oregon itself has a substantial body of law that addresses this very issue as the appellant has set forth in his briefs. Most notably, Amvac, Amvac 99 case, a trade secret case. Before we get into the case law, though, just going back to Judge Bryson's question. Sure. She looked at reasonable steps. And isn't that related to the limited disclosure issue? I mean, I'm having trouble teasing those two out. I mean, the question is, what reasonable steps did he take? And other than limited disclosure, is it your view that, did you point the judge to any other reasonable steps or any inferences that there were reasonable steps? Yes, by all means. His entire developmental program was directed to the needs of Nike. It was only after he had more or less given up on Nike that he made it. How does that go to whether or not he took reasonable steps? He limited the recipients to a single company until a point in time after the complaint of facts, after the complaint of appropriation, that having given up, he approached another company. That was probably, well, in addition to the careful selection of who his colleagues in the developmental process would be, with a selection of just a single, unlike many of the cases cited by my opposing counsel, involved people who made uncontrolled distributions to dozens of people in the industry. Dixon did nothing like that. He made a submission of this invention as opposed to an earlier, 1996 patent invention that's not relevant in this case, to only one company. Only one company in 1999. In 2000, he made it to more than one company, correct? In 2000, later in 2000, he made a submission to Adidas, but only after he was rejected for the third time by Nike. At that point, he gave up. He said, well, I'll try another company. So that establishes, because you only send your submission within a year period or whatever to one potential buyer or user, that is evidence of taking reasonable steps to protect your trade secret? It's one of the steps, because that was a clear... which is a subject of discovery. The invention submission or acceptance of submission policy of Nike itself provided that everything other than an issued U.S. utility patent would be returned sight unseen and, in so many words, treated as confidential. So that is another one of our problems. It deals more with the contract issue in this case. The Nike violated its own rules of what it would treat as confidential. I don't understand. Is that policy what's referenced in the letter where Nike says that it's returning outside of the utility patent? Yes. It's returning sight unseen? Yes. So tell me again how that establishes that your client took reasonable steps to protect his trade secret. We're talking about two sides of the same coin here. He took the steps that he, as a person of limited education, sophistication in the business world, thought were reasonable. Nike, in turn, had internal and established policies, which we do not question. We applaud. The problem was that it appears that some individual, as yet unknown, did not follow that internal policy that treated this type of submission, other than issued patents, as confidential. So, in a way, we feel the relevancy of the issue upon which Judge Brown based her decision is somewhat beside the point because Nike, through both its letter to Dixon and the remarks and affidavit and deposition of a Ms. Maxim, who was the interface, confirmed that this was a Nike policy. That's what the Nike policy said, that they would be limited and required submitters to have patent rights and that they were not considering or accepting responsibilities other than whatever might flow from the patent. Can you point me to where in their policy the points that you're making are supported? The text of the policy is not in the record. However, the... It's not? Then why are you arguing the policy? Because the comments of Ms. Maxim, who was the interface, reflect what she is relating the policy is. I can direct the court to that part of her testimony and affidavit. She acted in accordance with company policy. There's no evidence, I take it, that Mr. Dixon was aware in advance of the submission of the Nike policy, correct? No, he said, to repeat his own testimony, that he simply trusted Nike because of their reputation. That's all he said. Do you want to save any rebuttal time? Yes, yes. Ten minutes is up. Yes, I do. Thank you. Mr. Rains? Yes. The trial judge here did conclude that there was a limited disclosure, did she not? I mean, that was one of her findings, the fact. No, she did not, Your Honor. What she actually did at Appendix Page 12 is characterize Mr. Dixon's characterization as the disclosures as being limited. She did not make that finding, and that's a very important point. In this case, a very unusual circumstance took place. The trial judge spent four hours supervising Mr. Dixon's deposition in her chambers, and during that deposition, the unequivocal testimony of Mr. Dixon is that he took no steps, none, to maintain the so-called secrecy of his alleged trade secrets. Now, I've read the reply brief of the appellant, and I've listened to counsel, and I still yet to see whether any objectively reasonable steps have been taken. The appellant keeps going back to the so-called limited disclosure. Well, the objective evidence is that starting in 1996, Mr. Dixon started to attempt to get people interested in his patent. And in the gray brief at Page 23, the appellant states, Mr. Dixon's trade secrets are anchored in his patent. That's because he had no trade secrets. He had patent rights and no trade secret rights. As a result, he took no steps. He didn't tell anyone his information was confidential. He didn't mark his information confidential, including his brochure that Mr. Silverman pointed out to the court. He didn't mark his photograph as confidential. He didn't mark the two prototype shoes that he made as confidential. He didn't tell those to whom he disclosed the information to maintain their secrecy by not showing it to others or returning it when they were done with it or putting it behind lock and key or signing acknowledgments or asking for nondisclosure agreements. He did none of this, none of it at all, at any point in time. Now, the district court didn't assume for purposes of this case that the other requirements of Oregon 646.461-475 were satisfied, namely that other than reasonable steps, there is trade secret protection here. The court didn't reach those issues, and she mentions that in a footnote in her decision. There were other bases for Nike's motion for summary judgment that the court didn't reach. Now, the steps that Mr. Dixon was required to take by the case law, and there's no dichotomy in the case law. The case law is consistent, and most of the courts who've adopted the Uniform Trade Secret Act, including Oregon, have uniform interpretation provisions. So it is acceptable to look to other decisional law in other UTSA jurisdictions, which is exactly what Judge Brown did in this case. And she determined that there is no per se fact question on reasonable steps in Oregon under the OUTSA. In fact, it wouldn't make any sense because that would vitiate Rule 56C, which clearly says, and the AMFAC case says, if there are no genuine issues of material fact, genuine being an issue on which the jury could return a verdict for the non-movement of material fact, one that's outcome determinative, which in this case the reasonable steps inquiry is, summary judgment's mandated. And she said in certain circumstances, courts apply the summary judgment standard to grant summary judgment, and that's exactly what she did in this case. But if she had concluded—I don't want to be a dead horse— but if she had concluded that his disclosure was limited, that would have been sufficient, would it not, to defeat summary judgment in this case? If she had concluded that his— That there was limited disclosure, that he had limited his disclosure, would that be sufficient to defeat summary judgment? No, it would not. If she had concluded that he'd taken objectively reasonable steps insofar as— To limit. Correct. Insofar as all of his disclosures, then she would have addressed the other issues, the other summary judgment grounds. Well, I guess you really—let me propose this as maybe another way of articulating the point. Thank you, Michael. Which is that she would have had to have found not just that he, quote, took objective steps, but that a rational jury could not have concluded that he took reasonable steps, correct? Correct. In other words, she's not in a position to make a finding on that. She is not necessary. She just has to decide whether this is within the ambit of what a jury could find, and if she found it was outside of that spectrum, then she could have addressed that. That is correct. And again, Mr. Dixon testified he took no steps. Starting in 1996, he made a disclosure to FILA, which is of record. The only difference between the FILA submission and his so-called trade secret submission was the use of rubber columns. The record establishes that Nike had used rubber columns and issued U.S. patents two years before Mr. Dixon even came to them. Then in 1997, Mr. Dixon went to a company called Z-Coil to get funding, to get financing for his invention. No requirement of confidentiality whatsoever. In 1999, Mr. Dixon had his brochures printed up, 15 to 20 of them, and when asked why he showed them to Lieutenant Austin, why he showed them to Deputy Bentley, why he showed them to Sergeant Roll, all of his co-workers, he simply said, because I needed funding, I needed money. He was disclosing these so-called secrets because he wanted to get people interested in them economically. Those are disclosures that weren't limited. Those are disclosures that clearly intended to pique interest in the invention. He took the shoes. He gave a pair of shoes to an Italian shoemaker, Mr. Chris Anderson. One of the shoes, I should say, because again, there were only two prototype shoes that were made. Mr. Anderson took one of the shoes with him to Italy, and it mysteriously disappeared in a fire in a factory. Now, Mr. Dixon mentions, well, Chris Anderson, Mr. Anderson indicated that he would maintain the confidentiality of these trade secrets. Well, that's hearsay, and it's not confidence-summary judgment evidence. But even if it were, if you think about it, Mr. Dixon's asking for a do-over. He's saying, because of my subjective intent, which is not the law, I want to write out, I want to eliminate the third requirement of ORS 646461. I want to eliminate the reasonable efforts, and I want to point out, the statute calls for efforts, plural, not one effort, not two efforts, efforts, looking at the entirety of the picture. Mr. Dixon should have known as of the time he talked to Chris Anderson that confidentiality was an issue. Keep in mind, Mr. Dixon has three patents. He sought out competent IP counsel in 1994. He corresponded with major footwear manufacturers. He executed and entered into contracts with those manufacturers. He supervised the preparation of a high-gloss brochure and a photograph. And if anything, when somebody sends someone a patent, a marketing brochure with a TM indicating common-law trademark rights, which we all know are products of the marketplace, the public domain, and a photograph with no indicia of whatsoever, no indicia whatsoever of confidentiality, no reasonable person could conclude that that submission was made in confidence. But moving on from Chris Anderson, in 1999 he showed the brochures to coworkers, or I'm sorry, to neighbors. He never asked for any of these brochures back. He never told anyone to keep anything confidential. He never told people to limit their disclosures. He did nothing, and that's why in his last deposition before Judge Brown he said, I took no steps, because he took no steps. Then in 1999, and you are correct, there were no contemporaneous documents indicating that any submission was made in 1999 to Nike, or when, if at all, if in 1999 the submission was made, that it was actually made. But he had no prior relationship with Nike, and the district court so held. He didn't mark anything confidential. He didn't tell anyone to keep anything confidential. Nike had no idea who he was. All he sent was his public domain information. Then again in 2000, and counsel mentioned that the submission to Adidas was after Nike. Well, the record establishes that one of the 2000 submissions, the Adidas submission and the alleged third Nike submission were simultaneous. They were sent in the same day. So it wasn't after Nike said no finally for the last time that he finally went off to Adidas. It was at the same time, and he did the same thing. Interestingly enough, during his first deposition, Mr. Dixon said, I only gave it to Nike, and then when we went and subpoenaed Adidas, Adidas said, well, here, we have his identical disclosure and we have a non-confidentiality agreement that Mr. Dixon signed, wherein he said, you can do whatever you want with the disclosure. Now, there's an argument in the… What do you think is the pertinence of that? I think it's but another indicia of failure to take reasonable steps, and that even if Mr. Dixon's subjective intent applies, he didn't think he had confidential information because he told Adidas, you can show it to whomever you want. Now, in the gray brief, the appellant makes the point, well, Adidas is irrelevant because it's too late in time. It's not irrelevant because it's too late in time. That's the BDT products case. These were near simultaneous disclosures where there were no requests or requirements of confidentiality whatsoever. What's more, counsel, if I heard him correctly, said, some yet unknown person at Nike didn't follow the Nike policy. Now, think about that. Some yet unknown person. Discovery's closed, and we don't know who didn't follow the policy and where the purported misappropriation took place. Now, I realize this is not a case about a misappropriation on appeal at this point in time. But if, in fact, we've got the 1999 submission, and there's no question that that, or at least there's no indication that that was anything other than an isolated submission to Nike, so I don't understand, I mean, doesn't, irrespect, assuming you're correct, Nike, the submissions in 2000 were simultaneous. How does that get you off the hook? How is that relevant or dispositive of whether or not there was a misappropriation in the 1999 submission to Nike? Just so I understand the question, how does the Adidas submission get… Right, in 2000, which was simultaneous to Nike. I mean, that deals with that submission and whether Nike misappropriated the submission in that case. How does that get you to the 1999 submission? How does that get you off the hook with respect to the 1999 submission? Setting aside for a moment the unsolicited non-confidential disclosure to Nike in 1999 in and of itself vitiates the… Right, but the Adidas submission in 2000 doesn't help you get around the 1999 submission, correct? It does, for two reasons. First, in BDT products, there was evidence of seriatim disclosures, first to Lexmark, second to Tektronix, and to HP, and the court looked at the subsequent disclosures in that case, and they were almost simultaneous, just like in this case. We have a 1999 disclosure, an early 2000 disclosure, and a subsequent early 2000 disclosure. And the court said, yes, that is some evidence, that is evidence that the proponent of the trade secret didn't take reasonable steps. But there's a second reason, Your Honor, and here it is. The only record evidence, if you read the appendix on appeal, the only alleged record evidence of use of the trade secret is an Oregonian newspaper article, which, under the federal rules of evidence, may be self-authenticating, but doesn't cure the hearsay problem. There's no testimony and no evidence indicating when use took place. And under the financial programs case, which is cited in both parties' briefs, the District of Oregon makes clear, you cannot equate possession of a purported trade secret to use. There has to be evidence of use. What's the only evidence of use? The only evidence of use is the sale of shoes, well, the introduction of shoes and subsequent sale in the 2000 Olympics, fall of 2000. So Nike's purported use in the record evidence is after Adidas. So that's the factual reason why the Adidas submission is in fact relevant. Now, in summary, the statute requires objective steps. Mr. Dixon by his admission took no steps. There is no dichotomy in the case law, and for those reasons, summary judgment should be affirmed on the trade secret count. Turning briefly to the implied in law count, Mr. Dixon was given four opportunities over a two-and-a-half-year time period to amend his pleadings to get it right, to find some theory to develop. In each of the pleadings, in each of the record citations, I can give them to you, each and every time, at Appendix 6335, that's his first counterclaim, Appendix 7238, his first amended counterclaim, Appendix 7239, his second amended counterclaim, and Appendix 168. He expressly pled an implied in law contract, and he said, I want restitution. Now, the very letter of ORS 646-473 says, OUTSA supersedes conflicting tort restitution or other laws. He sought restitution, and the district court got it right. She got it right because she followed the very letter of the statute. What about the Oregon case, I've forgotten the name, that says that at least for statute of limitations purposes, implied in law contracts take the contract limitations period. Therefore, that's a contractual, a form of contractual remuneration. I mean, I know we all learned in law school that implied in law contracts are a misnomer, and they're not contracts. This notion of quasi-contract is not really a contract. But that doesn't appear to be what the Oregon court said, at least with respect to limitations. Well, I think that if you look at the context of the Oregon, the JACWA case, it looked like they were implied in fact contracts. But they had separately addressed implied in law. I read the case, and I was interested to notice that after they finished their discussion of implied in fact, they moved on to implied in law, and they also found that the contract limitations, as I read the case, applied to that cause of action as well. Well, two points. First of all, you've got the uniform interpretation provision, which in their numerous cases that we cited in our brief, and that Judge Brown in this case cited in her opinion, applying the preemption provision to quasi-contractual relief and restitutionary relief. And here we've got the factual distinction that Mr. Dixon was looking clearly to get compensated for idea misappropriation, and that's the whole purpose of the preemption provision in the statute. You've got also the Ackermann case, which is a federal district court, saying, hey, look, on these facts, the preemption provision applies. So we do have authority from the federal district court saying for preemption provision, for preemption issues, it is clear that contracts pled in law are in fact preempted. I see that I'm out of time. Thank you. Thank you, Mr. Rankin. Mr. Silverman. Your Honor, addressing the breach of implied contract issue first. It's implied in the law that you're asserting, right, not implied in fact? Yes. No, it's implied. And there has actually been the three so-called amended counterclaims as to this count are essentially identical. There was no dancing around or trying to find some magic words. The words are the same in every one of the amended counterclaims. It was other counts that were pled in a different fashion. The term implied in law is used with respect to the understanding that what Dixon offered in his letter to Nike carried an implied in law understanding that if his offer was accepted by whatever means, it would give rise to a contract. That does not negate or change the fact that the manner in which Dixon alleges the acceptance occurred gave rise to implied in fact contract. It was the action of what Nike did that gave rise to the acceptance. So you say there was an offer and acceptance, not formally executed, but as we usually say in implied in fact setting, that it was the equivalent of an agreement between the parties. Yes. Therefore, the contract remedies are implied as opposed to restitutionary remedies that are implied in law and contract. Absolutely. And I know much has been made of the fact that Dixon used the term implied in law to describe the nature of his offer. He was not describing the nature of his contract. And our position is that Nike, through its actions, accepted that offer and that gave rise to the implied in fact contract. As you pointed out, JACWA, at least in terms of statute of limitations, doesn't make any difference. Both are treated as contracts. Pretty bare bones offer. Therefore, not preemptible. Pretty bare bones offer. Pretty bare bones offer. What were the terms? How much was he offering his property for? How much did Nike commit itself to? It was not quantified, but it did say either license or sale in his letter. I'm afraid you're out of time. Is there anything else that you must tell us? Just that we feel AMVAC is the law which controls in Oregon and that AMVAC incorporates Rockwell written by the eminent Judge Posner of the Seventh Circuit. Okay. Thank you, Mr. Silverman. Mr. Rank, the case is taken under submission.